IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KRYSTAL HAWKINS,
and SAMANTHA PEPOS,

Plaintiff,

v.

ST. CLAIR COUNTY, RONALD
SCHAEFER, JAMES BEEVER,
and RICHARD JENKINS,   No. 07-142-DRH

Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Now before the Court is a Motion for Interlocutory Summary Judgment on the Issue of Liability Against Defendant Richard Jenkins (Doc. 56), filed by Plaintiffs Krystal Hawkins and Samantha Pepos. Defendant has filed an opposing memorandum (Doc. 63), to which Plaintiffs have replied (Doc 69). Defendant has further supplemented his response with his deposition transcript (Doc. 129). For the following reasons, Plaintiff's motion for interlocutory summary judgment (Doc. 56) is **DENIED**.

### II. Background

**A.  Plaintiff's First Amended Complaint**

On March 21, 2008, Plaintiffs filed their first amended complaint brought pursuant to U.S.C. § 1983, seeking monetary damages against all

Defendants for committing acts under color of law which "deprived Plaintiffs of rights, privileges, and immunities secured by law and the Constitution of the United States, including Plaintiffs' rights to be free from harm, excess force and cruel and unusual punishment, secured by the Eighth and Fourteenth Amendment." (Doc. 54, p. 8). Count I alleges that Defendants Richard Jenkins, Ronald Schaefer, James Beever, Gregg Gregory, Beverly Williams, Bridget Connors, Tyrone Sillas, Tomisha McNeal, Lisa Brennan, and Darron Suggs[1] actions and non-actions exhibited a deliberate indifference for Plaintiff's rights, and had customs, policies and practices that violated the federal rights of U.S. citizens and harmed Plaintiffs. (*Id.* at pp. 8-9). Count II alleges assault and battery against Richard Jenkins. (*Id.* at p. 10). Count III alleges a claim of intentional infliction of emotional distress by all Defendants and St. Clair County. (*Id.* at pp. 11-12). Count IV alleges a claim of negligent infliction of emotional distress by all Defendants including St. Clair County. (*Id.* at 12-13). Count V alleges a claim of negligence against Defendants Ronald Schaefer, James Beever, and St. Clair County. (*Id.* at p. 13).

In their First Amended Complaint, the Plaintiffs make the following factual allegations: that Plaintiff Samantha Pepos was a detainee at the St. Clair County Juvenile Detention Center between February 9, 2006 and May 9, 2006, while Plaintiff Krystal Hawkins was a detainee at the St. Clair County Juvenile Detention

---

[1] Defendants Gregg Gregory, Beverly Williams, Bridget Connors, Tyrone Sillas, Tomisha McNeal, Lisa Brennan, and Darron Sluggs were voluntarily dismissed from the case by the Plaintiffs on November 24, 2008 (Doc. 123).

Center between January 27, 2006 and February 27, 2006. (*Id.* at p. 4). Defendant Richard Jenkins worked at the St. Clair County Juvenile Detention Center and between January 27, 2006 and February 27, 2006, Jenkins, acting in his individual and official capacity, sexually abused Plaintiffs and threatened Plaintiffs. (*Id.* at p. 6).

Plaintiffs further allege that two other corrections officers at the Juvenile Detention Center committed separate acts of sexual abuse with detainees at the St. Clair County Juvenile Detention Center eighteen months prior to Plaintiffs' detention. Defendants had actual or constructive knowledge that corrections officers had the customs , policies, and/or practices of engaging in acts of sexual abuse with minor detainees (*Id.* at 4). Plaintiffs further allege, that despite this knowledge of sexual abuse by corrections officers, Defendants Ronald Schaefer and James Beever, acting in their individual and official capacities and under the color of law and pretense of state law and as employees and agents of St. Clair County, failed to train its correction officers and create and enforce procedures and policies to prevent sexual abuse by its employees and protect Plaintiffs. (*Id.* at 6).

### B. Plaintiff's Motion For Summary Judgment

Plaintiffs now move for summary judgment on the issue of liability as to Count II for assault and battery against Defendant Jenkins because they believe that they have stated a *prima facie* case for assault and battery and because they argue that this Court may draw adverse inferences from Defendant Jenkins' refusal to answer deposition questions.

Plaintiffs submit direct and circumstantial evidence that they argue establishes a *prima facie* case for assault and battery. In their interlocutory summary judgment motion, Plaintiffs allege the following facts: Plaintiffs were both minors the entire time they were incarcerated at the St. Clair County Juvenile Detention Center. (Doc. 56, p. 3). After both Plaintiffs had been released, on June 5, 2006 a fellow detainee wrote Jim Beever, the superintendent of the Detention Center, telling him that a correctional officer named Richard sexually assault Samantha Pepos. (Doc. 56, Ex. 3). The detainee stated that Richard also gave her gum, cookies, and candy at night. (*Id*.). After receiving the letter, on June 12, 2006, Michael Buettner, Deputy Director of Court Services at St. Clair County, interviewed Plaintiff Pepos and obtained a voluntary statement from her. (Doc. 56, p. 4). Plaintiff Pepos stated that Defendant Jenkins would enter her room at night and touch her. (Doc. 56, Ex. 5). Plaintiff Pepos also stated Defendant Jenkins would bring her gum, cookies and candy and further stated that she believed Defendant Jenkins had also "done something" to Krystal Hawkins. (*Id*.). A sheriff's investigator talked with Plaintiff Pepos the same day after the interview and she affirmed her voluntary statement (Doc. 56, Ex. 6).

On June 13, 2006, Sgt. Thomas Trice and Investigator Daniel Stocket interviewed Defendant Jenkins and in his unsworn videotaped interview, Defendant Jenkins stated that he never touched any girls or gave them food. (Doc. 56, Ex. 6). On June 23, 2006, Plaintiff Pepos gave a videotaped interview, in which she reiterated that Defendant Jenkins sexually abused her, to members of the sheriff's

department, attorney's office, Department of Children and Family Services, and St. Clair County Child Advocacy Center (Doc. 56, Ex. 8). On June 27, 2006, Jodi Jones, a corrections officer that worked with Defendant Jenkins, admitted to Michael Buettner and Ronald Schaefer that she was aware that Defendant Jenkins gave Plaintiff's cookies at night and would open their security room doors in order to pass the snacks to them (Doc. 56, Ex. 9).

On August 3, 2007, Brad Clossen videotaped an interview with Plaintiff Hawkins in which she stated that Defendant Jenkins would let her use his cell phone, would come into her room and touch her, call her on the intercom and tell her to get undressed, and pull out his penis and tell her to suck it. (Doc. 56, Ex. 6).

On January 11, 2007, Ronald Schaefer, Director of Court Services, issued a memo to Defendant Jenkins, ordering his presence at a hearing regarding violations of Department and County policies based on the complaints of Plaintiff Pepos and Plaintiff Hawkins. (Doc. 56, Ex. 12).

On March 8, 2007, the Illinois Department of Children and Family Services released the results of its investigation into the allegations against Defendant Jenkins and the report concluded that the complaint had been "indicated," meaning there was credible evidence of child abuse found by the caseworker. (doc. 56, Ex. 13).

On December 4, 2007, Defendant Jenkins was deposed by Plaintiffs' attorneys and asserted his Fifth Amendment privilege when asked about the

allegations of Plaintiffs Hawkins and Pepos. (Doc. 56, Ex. 14). Plaintiff Pepos also was deposed and she stated that her prior representations in her voluntary statement were true and she testified in detail that Defendant Jenkins touched her, held her against the wall and kissed her, and simulated sex. (Doc. 56, Ex. 2, 73: 7-14, 72: 23-75: 3, 86:12-87:12). Plaintiff Pepos further gave a sworn affidavit confirming the truth of those allegations. (Doc. 56, Ex. 15). Plaintiff Hawkins also was deposed and testified that Defendant Jenkins perpetrated acts of sexual misconduct on three separate occasions. (Doc. 56, Ex. 1, 187: 2 - 233:10, 296:22 - 297:3).

Defendant Jenkins filed a response to Plaintiffs' motion for summary judgment, arguing that the evidence establishes that questions of material fact exist. (Doc. 63). Defendant Jenkins further argues that the Court can not draw negative inferences from Jenkins assertion of his Fifth Amendment privilege because he withdrew that privilege. (Doc. 63, pp. 3-4). While Defendant Jenkins admits that he initially asserted his Fifth Amendment privilege, he later sough leave of court to amend his answer. (Doc. 42). On February 7, 2008, the Court granted Defendant Jenkins motion to amend his answer. (Doc. 47). Subsequently, Defendant Jenkins filed his amended answer which denied all material allegations.

Defendant Jenkins' response also offers up a substantially different version of the facts from Plaintiffs' allegations. Defendant Jenkins substantiate his factual account from his deposition testimony and his sworn affidavit. (Doc. 63, Ex. A & Doc. 129, Ex. A). In his sworn affidavit, Defendant Jenkins denies that he ever

touched or threatened Plaintiffs Pepos and Hawkins. (Doc. 63, Ex. A). In his deposition testimony, Defendant Jenkins admitted that he gave cookies to detainees including Plaintiff Pepos, although he denies ever giving Plaintiff Hawkins any snacks. (Doc. 129, Ex. A, 7:21 -9:4; 56:12 - 63:5, 69:20-70:18). Defendant Jenkins further admitted that he let Plaintiff Hawkins use his cell phone on approximately seven occasions. (See *Id*. at 70:19 -20, 73:8 - 84:1, 102:16 - 116:10, 159:13 - 164:12, 174:11 - 176:17). However, Defendant Jenkins denied that he ever touched, had sexual contact with, exposed himself to, or wrote love letters to either Plaintiffs. (See *Id*. at 47:19 -48:8, 113:14 -16, 116:21 -118:5, 119:18 -22, 120: 8 -12, 122:9 - 19, 126:13 -16, 126:24 -127:4). Defendant Jenkins also denied ever kissing or pushing either Plaintiff. (*Id*. at 127:16-19, 128:7 -11). Defendant Jenkins further denied ever threatening or intimidating Plaintiffs. (*Id*. at 123:16 -124:4, 125:3 -12, 125:14 -24, 129:15 -23, 130:10 -16). Defendant Jenkins stated that the extent of his contact with Plaintiff Pepos was that he secretly gave her and other juvenile detainees cookies. (*Id*. at 70:5 -18). Defendant Jenkins further stated that the extent of his relationship with Plaintiff Hawkins was that he secretly let her use his cell phone on several occasions. (*Id*. at 70:19 -22).

### III. Discussion

**A.     Summary Judgment**

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Inc. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999).** In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing** *Celotex*, **477 U.S. at 324).**

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 249-50 (1986) (citations omitted);** *accord Starzenski v. City of Elkhart*, **87 F.3d 872, 880 (7th Cir. 1996);** *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994).** "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgmnet." *Weeks v. Samsung Heavy Industries Co., Ltd.*, **126 F.3d**

926, 939 (7th Cir. 1997). In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead the Plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**B. Analysis**

Under Illinois law, "assault" is defined as when a person without lawful authority engages in conduct "which places another person in reasonable apprehension of receiving a battery." **720 Ill. Comp. Stat. 5/12-1.** Likewise, in Illinois, a person commits a "battery" if "he intentionally or knowingly without legal justification and by any means, 1) causes bodily harm to an individual or 2) makes physical contact of an insulting or provoking nature with an individual." **720 Ill. Comp. Stat. 5/12-3.** In order to state a cause of action for intentional battery, a plaintiff must allege a willful touching of another person without the consent of the person that was touched. ***Kling v. Landry*, 292 Ill.App.3d 329, 339 (2nd Dist. 1997).**

Plaintiffs argue that they should be granted summary judgment on the issue of liability against Defendant Jenkins for assault and battery because Plaintiffs state a *prima facie* case for assault and battery and because the Court may draw

adverse inferences from Defendant Jenkins' refusal to answer deposition questions. Plaintiffs present several pieces of direct and circumstantial evidence they allege establishes a *prima facie* case for assault and battery against Defendant Jenkins. Plaintiffs further assert that the Court can draw adverse inferences from Defendant Jenkins invocation of his Fifth Amendment privilege.

In **Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551 (1976)**, the Supreme Court held that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]" ***Id.* at 318, 96 S.Ct. at 1558.** The Seventh Circuit has interpreted Baxter "to mean that the negative inference against a witness who invokes the Fifth Amendment in a civil case is permissive, not required." ***Evans v. City of Chicago*, 513 F.3d 735, 741 (7th Cir. 2008) (citing *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993)); see also *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own.").**

In a motion for summary judgment, however, the moving party can not simply rely on the adverse inference created by the non-movant's invocation of his Fifth Amendment privilege. Instead, the movant must show that the evidence in the record requires judgment as a matter of law. ***LaSalle*, 54 F.3d at 391** ("deeming

**an allegation of a complaint to be admitted based on the invocation of the Fifth Amendment privilege without requiring the complainant to produce evidence in support of its allegations would impose too great a cost and exceed the authorization of *Baxter*").** The Defendant's silence must "be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability." *Id.* In this case, however, Defendant Jenkins has revoked his Fifth Amendment privilege. **See *Evans v. City of Chicago*, 513 F.3d 735, 745 (7th Cir. 2008)[2]; *U.S. v. Certain Real Property and Premises known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 84 (2nd Dist. 1995) (The district court should take a liberal view towards applications to withdraw the invocation of the Fifth Amendment because "withdrawal allows adjudication based on consideration of all the material facts to occur.").**

Further, in this case, there are clearly two differing factual accounts provided by Plaintiffs and Defendants. Plaintiffs offer testimony (mainly the deposition testimony, affidavit, and voluntary statement of Samantha Pepos as well

---

[2] Plaintiffs have failed to cite to any case law regarding the Court's ability to draw an adverse inference from the Defendant at the summary judgment stage when the Defendant has withdrawn his Fifth Amendment privilege. Although the Seventh Circuit has not addressed the issue of whether the Court may draw an adverse inference against a defendant at the summary judgment stage where the defendant has previously withdrawn the privilege, the Seventh Circuit has addressed whether the defendant's former silence can be used against him at trial. In *Evans v. City of Chicago*, 513 F.3d 735, 745 (7th Cir. 2008), the Seventh Circuit stated that "if additional discovery alleviates the prejudice from an untimely request to testify the district court may exclude evidence of prior silence because 'the effect of such a ruling would [no longer] be tantamount to allowing [a party] to avoid discovery altogether.'" *Id.* **(citing *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001)).** Here, Defendant Jenkins withdrew his privilege and filed his amended answer at least a month before Plaintiffs filed their motion for summary judgment. Since that time, Defendant has participated in the discovery process and submitted to a deposition.

as the deposition testimony and affidavit of Krystal Hawkins) testifying that Defendant Jenkins "willfully touched or successfully attempted to commit violence on Plaintiffs." (Doc. 54, ¶ 37). Plaintiff Pepos, in her voluntary statement, stated that Defendant touched her in her private areas and well as touched her breasts. She also stated that he would lay on top of her and "dry hump her." She also alleged that he would bring her gum, cookies, and candy. Plaintiff Pepos reiterated that Defendant Jenkins sexually abused her in her videotaped interview to Becky Watson from the St. Clair County Child Advocacy Center (Doc. 56, Ex. 8), deposition testimony (*Id*. at Ex. 2), and affidavit (*Id*. at Ex. 15). In her deposition testimony, Plaintiff Pepos testified that Jenkins toucher her, held her against the wall and kissed her, and simulated sex. (*Id*. at Ex. 2, 73:7 -15; 72:23 - 75:3; 86:13 087:12). Plaintiff Hawkins also stated in a videotaped interview that Defendant Jenkins touched her breast and private areas, pulled out his penis wanting her to suck it, and got undressed for him two or three times. (*Id*. at Ex. 6, pp. 5-6). Plaintiff Hawkins also stated that Defendant Jenkins would give her a cell phone while he worked which she used to call her mom, dad, friend and two sisters. (*Id*. at Ex. 6, p. 6). Plaintiff Hawkins reiterated her statements in her deposition testimony (*Id*. at Ex. 1) and her affidavit (*Id*. at Ex. 16). Plaintiff Hawkins stated that Defendant Jenkins perpetrated acts of sexual misconduct on three occasions and fondled her breasts, kissed her, and exposed his penis. (*Id*. at Ex. 1, 187:2 - 233:10).

      To further substantiate their claims, Plaintiffs have submitted a memo from Michael J. Buttner, Deputy Director, to Ronald L. Schaefer, Director of Court

services, which details an interview with Officer Jodi Jones, a corrections officer that worked at the Detention Center with Richard Jenkins. (Doc. 56, Ex. 9). Officer Jones stated that detainee girls told her that Defendant Jenkins "would sneak [the detainee girls] cookies at night and would open their security room door to give them snacks." (*Id.*). Plaintiffs also offer the Supplemental Investigative Report of Investigator Brad Clossen containing subpoenaed information regarding Defendant Jenkins' cell phone records which include 19 phone calls to numbers Plaintiff Hawkins gave him in her interview. (Id. at Ex. 11).

On the other hand, Defendant's own deposition testimony and affidavit[3] state that Defendant never touched either Plaintiff. (See. Docs 129, Ex. A; Doc. 63, Ex. A). While Defendant Jenkins admits that he gave Plaintiff Pepos and several other female detainees cookies on two days and letting Plaintiff Hawkins use his cell phone on several occasions, he denies any sexual contact with the Plaintiffs. Plaintiff states that he gave the female detainees cookies because he didn't want them to think that he didn't like them or that he "had a bad agenda against them." (Doc. 129, Ex. A, 57:3 - 58:18). He, however, denied that he ever opened their cell doors to give them cookies, instead stating that he put the cookies in napkins and slid them under the door. He stated that he let Plaintiff Hawkins use his cell phone because she stated she needed to call her mother. He denied ever touching either Plaintiff on the

---

[3] Plaintiffs argue that Defendant's affidavit is self-serving, without any factual support in the record and therefore insufficient to defeat Plaintiff's motion for summary judgment. **See *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).** However, Defendant Jenkins has supplemented his response and affidavit with his deposition testimony.

outside of their clothes or having oral sexual contact with them. He further denied any inappropriate contact with the Plaintiffs and also denied threatening the Plaintiffs.

Clearly there is a factual dispute as to whether Defendant Jenkins committed assault and battery against either Plaintiffs. Plaintiffs claim that Defendant Jenkins did touch them without their consent and created a "well-founded fear of imminent peril, coupled with the apparent present ability" to cause that harm. While Plaintiffs have submitted circumstantial evidence, the evidence submitted refers to the fact that Defendant Jenkins gave Plaintiff Pepos cookies and let Plaintiff Hawkins use his cell phone. Defendant Jenkins, conversely, denies any inappropriate contact with the Plaintiffs. There is clearly a dispute of material facts regarding whether Defendant Jenkins actually committed an assault and battery against Plaintiffs. Therefore, it is clear Plaintiffs have not shown grounds for granting summary judgment in their favor with respect to the issue of liability on Plaintiffs' assault and battery claims.

## IV. Conclusion

The Court finds that questions of material facts exist in this matter. Two distinctly different factual actions exist, one maintained by Plaintiffs and the other maintained by Defendant Jenkins. Questions of material fact negate awarding summary judgment. Therefore, Plaintiffs' motion for summary judgment (Doc. 56) is **DENIED**. Further, pursuant to the Court's Order of July 28, 2008, the Plaintiffs have up to and including **March 18, 2009**, in which to file their response to

Defendant's motions in limine (Docs. 82, 83, 84, 85, 87, 88, 89, 93, 124) and Defendant's motion to bar (Doc. 86).

**IT IS SO ORDERED.**

Signed this 4th day of March, 2009.

/s/        DavidRHerndon
**Chief Judge
United States District Court**