IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KRYSTAL HAWKINS and
SAMANTHA PEPOS,

Plaintiff,

v.

ST. CLAIR COUNTY, RONALD
SCHAEFER, JAMES BEEVER,
and RICHARD JENKINS,                                    No. 07-142-DRH

Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Now before the Court is Defendants St. Clair County, Illinois, Ronald Schaefer, and James Beever's ["Defendants"][1] Motion for Summary Judgment (Doc. 80). Plaintiffs Hawkins and Pepos have filed a response (Doc. 108). Defendants have filed a reply (Doc. 111).

### II. Factual Background

Plaintiffs' claims against Defendants stem from the alleged sexual abuse of Plaintiffs by Defendant Richard Jenkins while Defendants were housed at the St. Clair County Detention Center between January 27, 2006 and May 9, 2009. Plaintiffs have also brought suit against St. Clair county and individuals allegedly

---

[1] Defendants Gregg Gregory, Beverly Williams, Bridget Connors, Tyrone Sillas, Tomisha McNeal, Lisa Brennan, and Darron Suggs were originally parties to this motion, but were subsequently dismissed from the above captioned case.

employed by St. Clair County. On March 21, 2008, Plaintiffs filed a five count amended complaint (Doc. 54). Plaintiffs allege that Defendants James Beever, Superintendent of the Detention Center, and Ronald Schaefer, Director of Court Services, were employees, agents, and servants of St. Clair County and that St. Clair County controlled and supervised the detention center. (Doc. 54 ¶¶ 8, 9, 17). In Count I of the complaint, Plaintiffs allege that Defendants are liable to Plaintiffs for depriving the Plaintiffs of their rights under the Eighth and Fourteenth Amendment due to different action and non-actions stated in the Complaint. (*Id*. at ¶¶ 30-35). Specifically, in Count I Plaintiffs allege that Defendants had customs and practices that violated the federal rights of U.S. citizens in that Defendants: a) sexually abused detainees, b) failed to hire and retain corrections officers, and create and execute policies to protect detainees, c) failed to train corrections officers and create policies and procedures to ensure Plaintiffs were protected, d) failed to supervise corrections officers, e) failed to create and enforce procedures and policies to prevent and deter sexual misconduct by employees, f) failed to report that they had reasonable cause to believe a child may be an abused child, and g) failed to protect Plaintiffs from harm from Defendant Jenkins. (*Id*. at ¶ 33). Count II alleges that Defendant Richard Jenkins, acting in his individual and official capacity, committed assault and battery against Plaintiffs. (*Id*. at 36-41). Count III against all Defendants alleges claims of intentional infliction of emotional distress. (*Id*. at 42-48). Count IV against all Defendants, in their individual and official capacity, alleges negligent infliction of emotional distress. (*Id*. at 49-52). Count V against Defendants, in their individual

and official capacity, alleges negligence. (*Id*. at 53-54).

### III. <u>Summary Judgment Standard</u>

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. ***Schneiker v. Fortis Inc. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000);** ***Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).** In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324).**

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be

granted." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted);** *accord Starzenski v. City of Elkhart*, **87 F.3d 872, 880 (7th Cir. 1996);** *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994).** "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgmnet." ***Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997).** In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead the Plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. ***Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968);** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986)).**

## IV. <u>Analysis</u>

**A. St. Clair County**

Defendant St. Clair County ("County") first argues that it is entitled to summary judgment on all of Plaintiffs' claims because the individual defendants were not employees or agents of the County. The County argues that Plaintiffs' theory of liability is based on allegations that the County controlled and supervised St. Clair County Detention Center, its employees and detainees and that each individual Defendants were employees or agents of the County. St. Clair County argues that the individual Defendants were not employees or agents of the County. However,

Plaintiffs' complaint is partly brought pursuant to **42 U.S.C. § 1983**, arguing that St. Clair County instituted or failed to institute policies that caused Constitutional injuries to Plaintiffs. Under Section 1983, a municipality is not vicariously liable for the acts of its employees, but its constitutional deprivation is based on its policies or customs. ***Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008)**. Whether the individual defendants were agents of the County, as Plaintiffs point out, is not determinative of the County's liability under Section 1983.

Further, Plaintiffs have presented a genuine issue of material fact as to whether the individual Defendants were agents of Defendant St. Clair County. To determine whether an agency relationship exists (and liability attaches) the Court must determine "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." ***Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (quoting *Anderson v. Boy Scouts of Am., Inc.*, 226 Ill.App.3d 440, 168 Ill.Dec. 492, 589 N.E.2d 892, 894 (1992))**. Furthermore, the "question of whether a principal-agency relationship existed is generally one of fact, but it becomes one of law where the evidence is not disputed." ***Valenti v. Qualex, Inc.*, 970 F.2d 363, 368 (7th Cir. 1992)**. St. Clair County argues that it has no authority or ability to direct and control the employees of the Juvenile Detention Center because the Chief Judge of the Twentieth Judicial Circuit of Illinois is the employer of detention officers and has

control over the hiring and discipline of employees at the Detention Center. (Doc. 80, Ex. B pp. 27-28). **See also 730 ILCS 110/13.** However, Plaintiffs point to St. Clair County's Personnel Code, which applies specifically to the Probation Department for the Twentieth Judicial Circuit, as evidence of the County's ability to control employees at the detention center. The Code defines an employee as a "person working...for...the Probation Department of the Twentieth Judicial Circuit." (Doc. 108, Ex. 14 at § 28-1-1). Further, Plaintiffs point to the County's right to discipline and terminate employees that violated that personnel code as evidence that detention center officers were agents of the County. (Doc. 108, Ex. 14 at § 28-3-1; Ex. 15 at § 28-19-1 to § 28-19-10). Further, Plaintiffs point to the fact that St. Clair County provided employees with tools, materials, and equipment as well as were responsible legally under **730 ILCS 110/14** for determining the amount of compensation for Detention Center employees as evidence of an agency relationship. **See** *Amigo's Inn, Inc. v. License Appeal Comm'n of City of Chicago*, **354 Ill.App.3d 959, 965, 822 N.E.2d 107, 113 (1st Dist. 2004) (right to control method of work, method of payment, and furnishing necessary tools, materials, and equipment factors in determining whether an individual is an agent);** *Hills v. Bridgeview Little League Association*, **195 Ill.2d 210, 240, 745 N.E.2d 1166, 1185 (2000) (employer control's salary and has economic leverage and control over an employee)**. Therefore, Plaintiffs have demonstrated a genuine issue of material fact as to the issue of whether an agency relationship exists between the

individual defendants and St. Clair County.  See *Amigo's Inn, Inc.*, 354 Ill.App.3d at 965 (issue of whether an agency relationship existed is generally one of fact).

B.   Section 1983 Claim

   1.   Widespread Practice

Plaintiffs claim that St. Clair County is liable under § 1983 because the County instituted or failed to institute policies or customs that proximately caused Constitutional injuries to Plaintiffs.  This type of claim, must be based upon a showing that the County's policy itself is the source of Plaintiffs' constitutional injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) ("a municipality cannot be held liable under § 1983 on a respondeat superior theory").  In order to show that the County is liable for a § 1983 violation of Plaintiffs' civil rights by having an unconstitutional policy or custom, Plaintiffs must demonstrate either that:

> (1) the [County] had an express policy that, when enforced, causes a constitutional deprivation;
> (2) the [County] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or
> (3) plaintiffs' constitutional injury was caused by a person with final policymaking authority.

*McCormick v. The City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

As stated by the Seventh Circuit, "to maintain a § 1983 claim against a

municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." ***Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)**. Further, to attribute liability to the County, Plaintiffs must show that County policymakers "were 'deliberately indifferent as to [the] known or obvious consequences.'" ***Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 297, 406-07, 117 S. Ct. 1382 (1997))**. In other words, that "'a reasonable policymaker [would] conclude that the plainly obvious consequences' of the [County'] actions would result in the deprivation of a federally protected right." ***Id.* (alteration in original)**.

Plaintiffs have presented a theory of liability under § 1983 that St. Clair County had a custom, policy, and practice that resulted in the deprivation of a federally protected right. Defendants argue that Plaintiffs can point to no permanent, well settled and wide-spread policy of the County that caused Plaintiffs injury. Defendants argue that sexual abuse was not a custom, policy, or practice. However, Plaintiffs argue that the widespread practice was the custom of allowing corrections officers to have unmonitored access to juvenile detainees. Plaintiffs offer evidence showing a long history of unmonitored access to detainees by corrections officers at the Detention Center. Plaintiffs point to the deposition testimony of Ronald Schaefer, Director of Court Services, and James Beever, the Superintendent of the Detention Center, to support the widespread custom of unmonitored access. Schaefer stated

that he realized that the Detention Center had a problem with unmonitored access to juvenile detainees in 1976 when a detainee was impregnated by an officer. (Doc. 108, Ex. 4 at pp. 144:20 - 145:20). Beever also stated that he was aware of issues with unmonitored access in 1979, stating that he learned that "we have got to be careful with one-on-ones with juveniles." (*Id*. at Ex. 5 at p.153-54). Further, in 1994, another correction officer admitted to sexually molesting a minor detainee which made both Schaefer and Beever aware that unmonitored access was dangerous. (*Id*. at Ex. 4 at p. 175:18-23; Ex. 5 at p. 154:17-24).

Further, Plaintiffs allege that the County was aware of the unconstitutional customs of detention center officers. Plaintiffs state that the Court admitted in prior litigation involving detention center employee Thomas O'Donnell that it was aware of two additional incidents involving corrections officers. (*Id*. at Ex. 12). Plaintiffs also point out that Schaefer, in representing the County for purposes of answering its interrogatories in the O'Donnell case, acknowledged that the County was aware of the 1976 and 1994 incidents. Thus, Plaintiffs have offered evidence of a permanent, widespread practice of allowing unmonitored access to detainees.

### 2. Final Policymaking Authority

Defendants further argue that Plaintiffs cannot show that any policy or custom was established by any final policymaker of St. Clair County. Defendants argue that the Chief Judge, Schaefer, and Beever were policymakers for the Detention Center and they were employees of the State of Illinois, not subject to the control of St. Clair County. "[M]unicipal liability under § 1983 attaches where – and

only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect ot the subject matter in question." ***Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S. Ct. 1292 (1986)**. Whether a municipal official has final policymaking authority is a question of state or local law. *Id*. Defendants argue that Illinois law states that Court Services/Judicial employees and not employees of the County.

However, Plaintiffs argue that the County Board was a final policymaker in two areas of the Detention Centers business: 1) the decision to install surveillance cameras; and 2) the Detention Center's sexual misconduct policy. Plaintiffs point to Illinois statute which has divided authority between the Chief Judge and County, giving the County, Plaintiffs argue, shared final policymaking authority under the **Probation and Probation Officers Act, 730 ILCS 110/0.01 *et seq.***, and the **Juvenile Court Act, 705 ILCS 405/6-1(1)**. In particular, Plaintiffs argue, that the Probation and Probation Officers Act gave the county board the duty "to furnish suitable rooms and accommodations, equipment and supplies for probation officers." **730 ILCS 110/13.** Plaintiffs point out that the decision to install surveillance cameras was the responsibility of St. Clair County and that Beever had requested an additional camera be installed at the Detention Center, but the County failed to do so. (Doc. 108, Ex. 4 at p. 43:19-44:5; Ex. 5 at pp. 122-124). Further, Plaintiffs present evidence that the failure to install cameras resulted in Plaintiffs'

injuries, pointing to Beever's testimony that surveillance cameras would have allowed Beever to control Defendant Jenkins. (*Id*. at Ex. 5 at 167:10 - 168:3; 185:2-186:6).

Plaintiffs also argue that the County Board had final policymaking authority with regards to the Detention Center's sexual misconduct policy; particularly, Plaintiffs argue that the County had policymaking authority but failed to institute policies to prevent unmonitored access to juvenile detainees. Plaintiffs point to St. Clair County's personnel code which includes as employees, persons working for the Probation Department of the Twentieth Judicial Circuit. (Doc. 108, Ex. 14). Further, St. Clair County enacted the St. Clair County Sexual Misconduct Policy which was instituted at the Detention Center. (*Id.* at Ex. 15). Plaintiffs point out that Defendant Jenkins signed the County's Misconduct Policy. (*Id.* at Ex. 16). Plaintiffs argue that the County Board created the policy and Detention Center employees were required to follow it.[2] (*Id*. at Ex. 4 at p. 19-20; Ex. 5 at pp: 117, 131). Therefore, Plaintiffs have met their burden of showing a triable issue of fact by presenting some evidence that the County had final policymaking authority which caused Plaintiffs' injuries.

3.   **Failure to Train**

Defendants also argue that they should be granted summary judgment on Plaintiffs' § 1983 claim because Plaintiffs have not shown that the County is liable

---

[2] Defendant Schaefer did note that once they had an agreement with the Union, they stopped issuing the personnel code to new employees because they thought it did not pertain to them, although he admitted that the code was accepted by the Union.

under a failure to train theory. Defendants argue that detention officers were required to undergo 40 hours of training and were trained that juveniles were not to be intimidated, touched, or abused. (Doc. 80, Ex. B at pp. 19, 175-78). Defendant Jenkins was trained that he was not allowed to physically harm detainees, sexually assault them, or sexually touch them. (*Id*. at Ex. I at pp. 207-208). Further, Defendants argue that it was the Detention Center's policy that control room operators were to remain alert and attentive in monitoring the opening and closing of cell doors. (*Id*. at Ex. B at pp. 73; Ex. H at pp. 35-36, 45).

Establishing *Monell* liability on failure to train requires deliberate indifference. ***Stornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006)**. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [correctional officers] come into contact." ***Ross v. Town of Austin, Ind.*, 343 F.3d 915, 918 (7th Cit. 2003) (citing *Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989))**. "Deliberate indifference" is shown where the need for more or different training is "obvious," and the deficient training is likely to result in a constitutional violation. ***Canton*, 489 U.S. at 390.** Deliberate indifference can also be shown where a municipality fails to provide further training after learning of a pattern of constitutional violations. **See *Sornberger*, 434 F.3d at 1029-30 (citing *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997)).** Deliberate indifference may be found if a supervisory official act in the face

of actual or constructive notice that such failure to act will likely result in a constitutional deprivation. ***Ross,* 343 F.3d at 918;** ***Robles*, 113 F.3d at 735**.

Plaintiffs state that the training of officers was inadequate in that officers were not trained to identify and respond to signs of employee misconduct and corrections officers were not trained to monitor one another. Such training and policies, Plaintiffs argue, could have prevented the sexual abuse of Plaintiffs. (Doc. 108, Ex. 4 at pp. 169, 173-74). Here, Plaintiffs proffered evidence creates a triable issue of fact as to both prongs. Plaintiffs offer evidence of Defendants constructive knowledge of the need for surveillance cameras and additional training/policy regarding unmonitored access. Plaintiffs offer the deposition testimony of Schaefer who stated that he became aware of the problems of unmonitored access to juvenile detainees in 1976 when an officer impregnated a detainee. (Doc. 108, Ex. 4 at pp. 144-145). Beever also stated that he was aware that the Detention Center had to be careful with one-on-one access with detainees. (Ex. 5 at pp. 154). Beever had also recommended that surveillance cameras be installed in the Detention Center, an action that Plaintiffs argue was the responsibility of St. Clair County. (Ex. 5 at pp.122-123; Ex. 4 at pp. 43-44).

Plaintiffs also offer evidence of the County's involvement in another civil case regarding another correction officers alleged abuse of juvenile detainees as proof of the County's awareness of prior complaints of abuse. (Doc. 108, p. 17) (citing ***C.P. v. O'Donnell*, No. 05-784 (S.D.Ill.) (Oct. 31, 2005)**). While Plaintiffs argue that the case involving detention officer O'Donnell's sexual molestation of minor was

so severe, that they do not have to show a pattern of conduct to establish notice, Plaintiffs do cite St. Clair County's notice of other Constitutional violations of detainees dating back to 1976 as proof of deliberate indifference. St. Clair County admitted in the course of litigation involving O'Donnell that it was aware of two prior instances of inappropriate conduct between officers and juvenile detainees. (Doc. 108, Ex. 12). Further, Schaefer admitted that he was aware of an incident involving an officer impregnating a detainee when Schaefer started working at the Center in 1979. (Id. at Ex. 4 at pp. 144-15). Further, Plaintiffs argue that Defendants ignored obvious risks by not investigate sexual abuse complaints involving both O'Donnell and Defendant Jenkins. Plaintiffs offer the deposition testimony of Schaefer stating that he was advised by the State's Attorney of St. Clair County not to investigate the sexual abuse complaints of both officers. (Doc. 108, Ex. 3 at p. 117). This evidence gives rise to a triable issue of fact as to both prongs of deliberate indifference and St. Clair County's municipal liability. Thus, summary judgment on Plaintiffs' § 1983 claim is **DENIED**.

4.  **Individual Liability under § 1983**

Defendants also argue that the individual defendants can not be held liable under § 1983. "In order to recover damages against a state actor under Section 1983, a plaintiff must show that the actor was 'personally responsible for the constitutional deprivation.'" ***J.H. ex re. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) (citation omitted)**. A supervisor can be held liable "only if he or she 'had

some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct.'" *Id.* **(citing *Doyle v. Camelot Care Ctrs.,Inc.*, 305 F.3d 603, 614 (7th Cir. 2003))**. Defendants argue that none of the individual defendants, except Defendant Jenkins, were alleged to have been involved in the alleged sexual misconduct. Nor have Plaintiffs presented evidence showing that the individual defendants were aware of the conduct or personally involved in it. Plaintiffs have not presented any evidence demonstrating the involvement in the alleged sexual misconduct.[3] Therefore, the Court finds that Defendants Schaefer and Beever are entitled to summary judgment in their individual capacity as to Count I.

## C. Assault and Battery

Defendants also argue that they are entitled to summary judgment as to the official capacity claims asserted in Count II. Specifically, Defendants argue that Defendant Jenkins was not acting within the scope of employment as the Detention Center and was not hired to commit sexual misconduct. Illinois, however, has adopted **Section 317 of the Restatement (Second) of Torts** which states that a master has a duty to exercise reasonable control over a servant acting outside the scope of his employment if:

> a) the servant
> > i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > ii) is using a chattel of the master, and

---

[3] The Court notes that Plaintiffs' response brief lacks any arguments regarding the involvement of individual defendants, other than Defendant Jenkins, or individual liability under § 1983.

> b) the master
> > i) knows or has reason to know that he has the ability to control his servant, and
> > ii) knows or should know of the necessity and opportunity for exercising such control.

***Platson v. NSM, America, Inc.***, **322 Ill.App.3d 138, 145-46, 748 N.E.2d 1278, 1285-86 (2d Dist. 2001) (citing Restatement (Second) of Torts § 317);** ***Hills v. Bridgeview Little League Association*,** **195 Ill.2d 210, 229-242 (2000)**.

Here, Plaintiffs have demonstrated a triable issue of fact as to St. Clair County's liability for Defendant Jenkin's assault and battery. Plaintiffs have offered evidence that the Detention Center was possessed and furnished by St. Clair County and that Defendant Jenkins acts against Plaintiffs occurred at the Detention Center. (Ex. 4 at p. 40); **see also 735 ILCS 110/13.** Plaintiffs have also offered evidence that St. Clair County had the ability to control Defendant Jenkins. As stated previously, St. Clair County established a Personnel Code that included Detention Center employees. (Exs. 14 & 15). Evidence was also offered showing that St. Clair County had the ability to install surveillance cameras and Beever testified that installing cameras could have allowed Beever to control Defendant Jenkins. (Ex. 5 at p. 185). Further, Plaintiffs offer the evidence of Superintendent Beever admitting that Defendants had the ability to control Defendant Jenkins prior to his alleged acts as well as the ability to install surveillance cameras, and evidence of other detention officers misconduct as proof of St. Clair County's knowledge of the necessity and opportunity to exercise control. (*Id*. at p. 185:8-19, 186:1-6). Therefore, St. Clair

County is denied summary judgment on Count II of Plaintiffs' complaint.

### D.    Intentional Infliction of Emotional Distress

Under Illinois law, a claim of intentional infliction of emotional distress must allege the following elements: 1) Defendants' conduct was extreme and outrageous; 2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and 3) Defendant's conduct actually caused severe emotional distress. *Cangemi v. Advocate South Suburban Hosp.*, **364 Ill. App. 3d 446, 470, 845 N.E.2d 792, 813 (1st Dist. 2006)**. In this case, as the Court has found a question of material fact exists as to Plaintiffs' other claims, then this claim, too, must survive summary judgment. If Defendant Jenkins did, in fact, sexually abuse Plaintiffs then clearly they could have suffered severe emotional distress. Plaintiffs have presented questions of material fact as to whether Defendant Jenkins was an agent of St. Clair County. The question of material fact surrounding the County's municipal policy or policies which may have also caused Plaintiffs' constitutional injuries could also be the cause of their alleged emotional distress. Therefore, summary judgment with respect to Plaintiffs' claims of emotional distress is denied.

### E.    Illinois Tort Immunity Act

Defendants argue that they are entitled to summary judgment on Count IV and V of Plaintiffs' complaint because they are immune under the Illinois Tort Immunity Act.

Section 4-103 of the Illinois Tort Immunity Act provides that:

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correction facility, or if such facility is provided for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

**745 ILCS 10/4-103.** The Illinois legislature intended for the immunity to be absolute. ***Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998) (citing *Jefferson v. Sheahan*, 279 Ill.App.3d 74, 664 N.E.2d 212, 215-17 (1996)).** In *Payne*, the 7th Circuit found that defendants were immune under the Illinois Tort Immunity Act on plaintiff's claim for failure to protect inmates from self-harm. ***Id.* at 1044-45.** Similarly, the Court finds that Plaintiffs claims are admittedly based on Defendants failure to train correction officers and failure to protect Plaintiffs. Therefore, Plaintiffs' negligence claims in Counts III and IV are barred by the Illinois Tort Immunity Act as they involve Defendants' failure to provide sufficient personnel and supervision. Further, the individual Defendants are immune from Count IV's claim of liability based upon Defendant Jenkin's negligent acts. **See § 2-202 of Illinois Tort Immunity Act, 745 ILCS 10/2-204 ("Except as otherwise provided…a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.").** Therefore, Defendants are entitled to summary judgment on Count IV and V of Plaintiffs' complaint.

## F. Punitive Damages

Defendants argue that Plaintiffs are not allowed to seek punitive damages against Defendants in their official capacity on any claims because they are not permitted. Plaintiff has offered no arguments or case law regarding the ability to seek punitive damages. Defendant argues that municipalities are immune from punitive liability in § 1983 cases. ***City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)**. The same has been codified under Illinois statutory law, stating: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." **745 Ill. Comp. Stat. 10/2/102.** Defendants further argue, as to Defendants James Beever and Ronald Schaefer in their official capacity, that the Supreme Court has recognized that a suit against a municipal employee in his official capacity is really a suit against the municipality. **See *Johnson v. Village of Sandoval, Ill.*, No. 07-cv-0191, 2008 WL 961563 at *2-3 (S.D.Ill. April 8, 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))**. However, the Court notes that Plaintiffs complaint seeks only punitive damages in Defendant Schaefer and Beever's individual capacities. (Doc. 54, Counts I, III, IV, V). Plaintiffs have not alleged punitive damages against St. Clair County or against Schaefer and Beever in their official capacity. To the extent that Plaintiffs seek such damages against Defendants in their official capacity, Defendants are granted summary judgment.

## V. Conclusion

Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment on all counts of Plaintiffs' complaint (Doc. 80). The Court **DENIES** Defendant St. Clair County's motion for summary judgment as to Plaintiffs' § 1983 claim (Count I), and Defendants' motion for summary judgment on Plaintiffs' claims of assault and battery (Count II), and intentional infliction of emotional distress (Count III). The Court **GRANTS** Defendants' motion for summary judgment as to the claims of negligent infliction of emotional distress (Count IV) and negligence (Count V). The Court further **GRANTS** Defendants Schaefer and Beever summary judgment in their individual capacity as to Plaintiffs' § 1983 claim. The Court further **GRANTS** Defendants summary judgment on the issue of punitive damages to the extent Plaintiffs seek punitive damages against Defendants in their official capacity.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2009.

/s/     David R Herndon
**Chief Judge
United States District Court**